# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-1026

**SHIRLEY ELAINE FOSTER HOOPER, ET AL.**

**VERSUS**

**JACK L. HODNETT, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 244,397
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, and John D. Saunders and Jimmie C. Peters, Judges.

**AFFIRMED.**

**Koby D. Boyett**
**Attorney at Law**
**P. O. Box 12746**
**Alexandria, LA 71315**
**(318) 442-9462**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Edward W. Hooper, Jr.**
    **Gregory W. Hooper**
    **Shirley Elaine Foster Hooper**

**Charles S. Weems**
**Jonathan D. Stokes**
**Gold, Weems, Bruser, Sues & Rundell**
**P. O. Box 6118**
**Alexandria, LA 71307**
**(318) 445-6471**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Jack L. Hodnett**
    **Larry Wayne Prestridge**
    **Nola Jane McFalls**
    **PTQ Enterprises, Inc.**

**PETERS, J.**

The plaintiffs in this litigation, Shirley Elaine Foster Hooper, Edward W. Hooper, Jr., and Gregory Walter Hooper (hereinafter sometimes collectively referred to as "the Hooper plaintiffs") appeal the trial court's grant of a summary judgment dismissing their claims against one of the defendants, PTQ Enterprises, Inc. (PTQ). For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

This litigation began on April 17, 2012, as a petition filed by the Hooper plaintiffs as a shareholders' derivative action to recover damages for the alleged breach of fiduciary duties by certain officers and directors of PTQ; and as a petition to enforce dissenters' rights pursuant to La.R.S. 12:131. The Hooper plaintiffs named Jack L. Hodnett, Larry Wayne Prestridge, and Nola Jane McFalls as the officer/director defendants, and named PTQ as a "nominal defendant."

After a July 30, 2012 hearing, the trial court initially resolved the issues arising from the derivative action portion of the litigation by granting the defendants' peremptory exception of no right of action and dismissing, without prejudice, all claims asserted against Jack L. Hodnett, Larry Wayne Prestridge, and Nola Jane McFalls. The trial court executed a judgment to this effect on August 28, 2012.[1] The matter now before us involves the dissenters' rights issue.

PTQ responded to this claim by filing, among other pleadings, a motion for summary judgment, the basis of which is found in the first paragraph of the motion:

> Plaintiffs, Shirley Elaine Foster Hooper, Edward W. Hooper, Jr., and Gregory Walter Hooper, have no rights under the dissenters' rights statute, La. R.S. [] 12:131, and cannot prove all of the essential elements of a dissenter's rights claim against Defendant, PTQ Enterprises, Inc., as (1) the corporate transaction in question was not a

---

[1] On February 19, 2013, the Hooper plaintiffs reinstated their shareholders' derivative action against Mr. Hodnett, Mr. Prestridge, and Ms. McFalls, asserting new claims for recovery.

sale of all the corporate assets, (2) the corporate transaction was an excepted transaction under La. R.S. [] 12:131(B)(2) , and (3) no notice was given of a completed transaction to which the dissenter's rights would apply.

PTQ attached ten exhibits to its motion and an eleventh exhibit to its reply memorandum:

Exhibit D-1 Affidavit of Graves Theus

Exhibit D-2 Action by Written Instrument of the Shareholders

Exhibit D-3 Notice of Special Meeting of Shareholders

Exhibit D-4 Minutes of January 17, 2012 Shareholders' Meeting

Exhibit D-5 Action by Written Instrument dated January 18, 2012

Exhibit D-6 January 18, 2012 Letter from PTQ Counsel Theus

Exhibit D-7 Asset Purchase Agreement dated January 20, 2012

Exhibit D-8 February 6, 2012 Letter from Hooper counsel Boyett

Exhibit D-9 February 17, 2012 Letter from PTQ Counsel Theus

Exhibit D-10 Affidavit of Jack Hodnett

Exhibit D-11 Copy of PTQ's Articles of Incorporation

The Hooper plaintiffs attached seventeen exhibits to their opposition memorandum:

Exhibit Opp-1 Document entitled "Action by Written Instrument of the Shareholders of PTQ ENTERPRISES, INC.", dated January 5, 2012

Exhibit Opp-2 Notice of Special Meeting of the Shareholders of PTQ Enterprises, Inc., dated January 5, 2012

Exhibit Opp-3 Agenda for Special Meeting of Shareholders

Exhibit Opp-4 Bill of Sale

Exhibit Opp-5 Asset Purchase Agreement

Exhibit Opp-6 Audio recording of that certain special meeting of shareholders of PTQ Enterprises, Inc., held on January 17, 2012; with written transcript thereof

Exhibit Opp-7     Minutes of the Special Meeting of Shareholders of PTQ Enterprises, Inc., January 17, 2010

Exhibit Opp-8     Letter dated January 18, 2012 from J. Graves Theus, Jr, to Petitioners

Exhibit Opp-9     Document entitled "Action by Written Instrument of the Shareholders and Directors of PTQ Enterprises, Inc." dated January 18, 2012

Exhibit Opp-10     Letter dated February 17, 2012 from J. Graves Theus, Jr. to Koby D. Boyett

Exhibit Opp-11     Letter dated May 7, 2012, from Charles S. Weems, III to Koby D. Boyett

Exhibit Opp-12     E-mail correspondence of February 23, 2012 from Graves Theus to Koby D. Boyett

Exhibit Opp-13     Affidavit of Shirley Elaine Foster Hooper dated March 21, 2013

Exhibit Opp-14     Affidavit of Edward W. Hooper, Jr. dated March 21, 2013

Exhibit Opp-15     Affidavit of Gregory Walter Hooper dated March 21, 2013

Exhibit Opp-16     Document entitled "Shareholders Notice of Dissent and Objection to Proposed Corporate Action of PTQ Enterprises, Inc." dated January 17, 2012

Exhibit Opp-17     Letter dated February 6, 2012 from Koby D. Boyett to PTQ Enterprises, Inc.

The trial court heard the motion on April 1, 2013. At the beginning of the hearing, counsel for PTQ offered its eleven exhibits and the trial court ordered them admitted. After counsel for PTQ completed his argument, he offered all of PTQ's exhibits and "the entire record of this matter by reference." Thus, the plaintiffs' exhibits were introduced/admitted, as well.

Upon completion of the evidence, the trial court took the matter under advisement. On May 21, 2013, the trial court issued written reasons for granting the motion for summary judgment, stating in pertinent part:

The underlying purpose of the dissenters' rights statute is to ensure the fair treatment of minority shareholders. Although the original notice to shareholders described a transaction which would have given rise to dissenter's rights, the directors and majority shareholders of PTQ ultimately voted to approve the cash sale of only certain assets, and then with the reservation that PTQ must distribute the net proceeds of the sale to shareholders within one year, thereby ensuring the fair and equal treatment of the Hooper shareholders. The sale was consummated exactly that way, and the corporation did in fact distribute the net proceeds of that sale to all shareholders within one year.

The Hooper shareholders have no dissenter's[sic] rights. First the sale was not for all, or even substantially all, the PTQ assets. Secondly, the sale was only made after the directors and more than two-thirds of the shareholders resolved that the sale would be for cash and that net proceeds of the sale would be distributed to the shareholders in accord with their interests within one year.

There are no genuine issues of fact in this case, material or otherwise in this dissenter's rights case. The motion for summary judgment filed by PTQ is granted as to the dissenters' rights claims.

The trial court executed a judgment to this effect on May 28, 2013, certified it as an immediately appealable judgment, and thereafter the Hooper plaintiffs perfected this appeal.

In their appeal, the Hooper shareholders assert three assignments of error:

Assignment of Error 1: The trial court erred in failing to specify that dissenters rights existed for the benefit of SHIRLEY ELAINE FOSTER HOOPER, EDWARD W. HOOPER, JR., and GREGORY WALTER HOOPER.

Assignment of Error 2: The trial court erred in determining that the sale of corporate assets only applied to certain limited assets, less than all or substantially all of the corporate assets of PTQ ENTERPRISES, INC., such that cash alone is an asset sufficient to defeat the intent and purpose of LSA-R.S. 12:131, And,

Assignment of Error 3: The trial court erred in determining that the *post hoc* actions of Defendants were sufficient to transform the sale of corporate assets to a sale on terms for cash to be distributed within a year of the sale date, such that the sale was an excepted transaction to dissenters rights pursuant to LSA-R.S. 12:131(B)(2).

4

## OPINION

Louisiana Code of Civil Procedure Article 966, which governs summary judgment proceedings, has been significantly amended in both the 2012 and 2013 legislative sessions. While the procedure is still favored, and while the goal set forth in La.Code Civ.P. art. 966(A)(2) remains the "just, speedy, and inexpensive determination of every action except those disallowed by Article 969," the requirements of proof have significantly changed. Prior to August 1, 2012, the evidentiary burden in summary judgment matters was set forth in La.Code Civ.P. art. 966(B)(emphasis added), as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions *on file*, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.

However, by 2012 La. Acts No. 257, § 1, the Louisiana Legislature significantly changed La.Code Civ.P. art. 966, and one of those changes included amending and restructuring La.Code Civ.P. art. 966(B).[2] The language cited above was moved to a new subparagraph designated as La.Code Civ.P. art. 966(B)(2), but without the words "on file." To emphasize the significance of the deletion of these two words, the legislature added a subparagraph designated as La.Code Civ.P. art. 966(E)(2)(emphasis added), which provided that "[o]nly evidence *admitted* for purposes of the motion for summary judgment *shall* be considered by the court in its ruling on the motion." Still, the 2012 amendment did not change the burden of proof applicable to a motion for summary judgment.

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's

---

[2] We note that the Louisiana Legislature's amendment to La.Code Civ.P. art. 966 by 2013 La. Acts No. 391, § 1, again affected the burden of proof elements of the Article. However, the 2012 version of La.Code Civ.P. art. 966 was in effect from August 1, 2012 through July 31, 2013; thus it governs the summary judgment hearing in April 2013.

5

burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material of fact.

La.Code Civ.P. art. 966(C)(2).

It is well-settled that "[a]ppellate review of the granting of a motion for summary judgment is *de novo,* using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 7 (La. 7/2/12), 94 So.3d 750, 755 (citations omitted). In this matter, both litigants offered, and had admitted, the evidence they considered pertinent to the trial court's decision on this matter. Thus, they recognized, and complied with the evidentiary changes in La.Code Civ.P. art. 966.

The procedure for authorizing the sale of all or substantially all of the assets of a corporation is set forth in La.R.S. 12:121(B) which provides:

> If the corporation is not insolvent, such authorization may be given only by the shareholders, by vote of at least two-thirds of the voting power present (or by such greater or lesser proportion, not less than a majority, of the voting power present or of the total voting power, as the articles may require). The notice of the meeting of shareholders at which such authorization is considered shall state such consideration as a purpose of the meeting, and shall also contain, if applicable the following statement: "Dissenting shareholders who comply with the procedural requirements of the Business Corporation Law of Louisiana will be entitled to receive payment of the fair cash value of their shares if the transaction to be considered is effected upon approval by less than eighty per cent of the corporation's total voting power." If the corporation is insolvent, such authorization may be given by vote of two-thirds of the entire board of directors.

Louisiana Revised Statutes 12:131 sets forth the rights of the shareholders who choose to dissent from any action taken by the majority shareholders pursuant to La.R.S. 12:121(B), and although it contains eight sections, some with multiple

subsections, with regard to the matter before us, only La.R.S. 12:131(A) and (B)(2)(emphasis added) are pertinent:

A. *Except as provided in subsection B* of this section, if a corporation has, by vote of its shareholders, *authorized a sale*, lease or exchange *of all of its assets*, or has, by vote of its shareholders, become a party to a merger or consolidation, then, unless such authorization or action shall have been given or *approved by at least eighty per cent* of the total voting power, *a shareholder who voted against such corporate action shall have the right to dissent. . . .*

B. The right to dissent provided by this Section shall not exist in the case of:
. . . .
(2) *A sale for cash on terms requiring distribution of all or substantially all of the net proceeds to the shareholders in accordance with their respective interests within one year after the date of the sale.*
. . . .

Thus, while a vote of two-thirds of the shareholders present at a meeting called to authorize the sale of all or substantially all of the assets of a corporation is sufficient to effect the action, a vote of eighty percent of all of the shareholders of a corporation is required to effect a sale of all the corporate assets without making dissenter rights available to those shareholders voting against the action. However, even if the authorization is not carried by a vote of eighty percent of all the shareholders, dissenter shareholder rights are not allowed if the sale is cash and the proceeds are distributed to all shareholders within one year of the date of the sale.

The pleadings, depositions, answers to interrogatories, admissions and affidavits admitted into evidence in this matter establish that PTQ was incorporated on September 8, 1986, with the original incorporators being Mr. Hodnett and Edward W. Hooper.[3] At some point before the death of Edward W. Hooper on March 8, 1995, Mr. Prestridge and Ms. McFalls acquired ownership of shares of stock of PTQ; animosity arose between Edward W. Hooper and the other

---

[3] Edward W. Hooper is the husband of Shirley Elaine Foster Hooper, and the father of Edward W. Hooper, Jr. and Gregory Walter Hooper.

shareholders; and the relationship between the parties deteriorated to the point that Edward W. Hooper ceased any involvement with PTQ other than as a shareholder. By the time the current dispute arose in January of 2011, Mr. Hodnett and Mr. Prestridge each owned 1,000 shares of PTQ stock; Ms. McFalls owned 180 shares; and Mrs. Hooper owned an undivided one-half interest in 1,000 shares as well as the usufruct over the other one-half interest, with her two children owning the naked ownership of that one-half interest.

On January 5, 2012, the defendant shareholders executed a document entitled ACTION BY WRITTEN INSTRUMENT OF THE SHAREHOLDERS OF PTQ ENTERPRISES, INC.[4] asserting that they had held a meeting wherein they elected themselves Directors of PTQ; ratified and adopted bylaws for PTQ; and authorized Mr. Hodnett, as President, to call a special meeting of the shareholders for January 17, 2012, "[t]o consider and act upon the question of the sale of all or substantially all of the assets of the Company, including goodwill, franchise and other rights to T-Tex Industries, L.L.C., a Texas limited liability company." The record contains no evidence that the Hooper plaintiffs received any notice of the January 5 meeting, and none of them attended. Mr. Hodnett, in his capacity as President of PTQ, issued the special meeting notice that same day. In addition to stating the purpose of the special meeting, the notice contained verbatim the dissenting shareholder rights statement found in La.R.S. 12:121(B).

---

[4] Article VI of PTQ's articles of incorporation as amended provide that "[w]henever the affirmative vote of shareholders is required to authorize and constitute corporate action, the consent in writing to such corporate action signed by the shareholders having that proportion of the total voting power which would be required to authorize or constitute such action at a meeting of the shareholders shall be sufficient for the purpose, without the necessity for a meeting of shareholders. Such consent shall be filed in the corporate minute book and if the consent is signed by fewer than all of the shareholders having voting power, prompt notice shall be given to all of the shareholders of the action taken pursuant to such written consent." Such a procedure is authorized by La.R.S. 12:76.

8

Much of the discussion by those present at the January 17, 2012 shareholders' meeting[5] related to the personal animosity existing between the Hooper plaintiffs and the shareholder defendants, but it does establish certain specifics concerning the status of the corporation itself. It is clear that while PTQ enjoyed corporate status, it seldom functioned as a corporation in that the officers and directors regularly failed to comply with the annual shareholder meetings requirements, and did very little to keep the Hooper plaintiffs informed of corporate activity both before and after Mr. Hooper's death. The discussion also establishes that PTQ had nothing to sell but the physical equipment used in its business and that it was a corporation which was about to exist in name only.

Mr. Hodnett and the other two defendant shareholders made it clear to the Hooper plaintiffs at the January 17, 2012 meeting that even if the sale to T-Tex Industries, L.L.C. (T-Tex) did not occur, the corporation would cease to function. In fact, Mr. Hodnett informed the Hooper plaintiffs that all employees were being laid off that day;[6] he intended to cease working in any capacity on his birthday in March of 2012; and because the building where the corporation manufactured its product belonged to him, he intended to use the building to "park [his] motorcycle in it." With regard to the goodwill of the business and customer lists of importance, the defendant shareholders acknowledged that T-Tex was the corporation's main, and as a practical matter, only customer. When the Hooper plaintiffs sought time to review the corporate financial records, they were told that time was of the essence in the transaction in that it had to be consummated immediately or T-Tex

_____

[5] In addition to the defendant shareholders, Edward W. Hooper, Jr., and Gregory Walter Hooper, legal counsel for both sides of this litigation attended and participated in the meeting.

[6] Mr. Hodnett initially stated that the only salaried employee was a secretary, but subsequently referred to laying off "the girls."

would withdraw its offer. In fact, Mr. Prestridge commented that he really did not understand why T-Tex was making the offer in the first place.

The only formal action taken at the shareholders' January 17, 2012 meeting was the passage of two motions, both being made by Mr. Prestridge and seconded by Ms. McFalls. The first motion was that the corporation sell "all or substantially all the assets of the corporation" to T-Tex for the sum of $150,000.00; and that Mr. Hodnett be given the authority to determine the specific terms and conditions of the transaction. The second motion authorized Mr. Hodnett, in his capacity as President, to execute all necessary documents to effect the sale. The two Hooper brothers, having their mother's proxy, cast the only votes against both motions. Immediately after the vote was recorded, counsel for the Hooper plaintiffs gave the corporation a document entitled SHAREHOLDER NOTICE OF DISSENT AND OBJECTION TO PROPOSED CORPORATE ACTION OF PTQ ENTEPRISES, INC. The notice read in pertinent part:

> NOTICE IS HEREBY GIVEN THAT SHIRLEY ELAINE FOSTER HOOPER IS EXPRESSLY OPPOSED TO THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS OF PTQ ENTERPRISES, INC., INCLUDING GOODWILL, FRANCHISE AND OTHER RIGHTS TO T-TEX INDUSTRIES, LLC, AS SET FORTH IN THAT CERTAIN "Notice of Special Meeting of [ ] Shareholders PTQ Enterprises, Inc." dated January 5, 2012, AND ACCORDINGLY DOES VOTE HER SHARES AGAINST SUCH ACTION.

The next day, the defendant shareholders called another special meeting[7] not attended by any representative of the Hooper plaintiffs and approved a resolution which addressed the disposition of the funds to be received by the corporation from the T-Tex transaction. The resolution recognized the receipt of Mrs. Hooper's dissent from the previous action; noted that her vote caused the prior motions to

---

[7] This meeting was also apparently called pursuant to the authority provided in Article VI of PTQ's articles of incorporation as amended. None of the Hooper plaintiffs received notice of the calling of this meeting.

receive less than an eighty percent margin; and noted that La.R.S. 12:131(B)(2) "provides that no dissenters rights shall exist where 'a sale for cash on terms requiring distribution of all or substantially all of the net proceeds of the sale to the shareholders in accordance with their respective interests within one year after the date of the sale.'" To take advantage of the language of La.R.S. 12:131(B)(2), the defendant shareholders adopted the following resolutions:

> RESOLVED that the net proceeds of the sale of assets to T-Tex Industries, L.L.C. shall be distributed to all shareholders in accordance with their respective interests within one (1) year after the date of the sale.
>
> RESOLVED that Jack L. Hodnett, in his capacity as President, duly authorized pursuant to a resolution of the shareholders at a special meeting on January 17, 2012, hereby approves the distribution of the net proceeds of the sale of assets to T-Tex Industries, L.L.C. to the shareholders in accordance with their respective interests within one (1) year of the sale as a term and condition of the sale.

PTQ and T-Tex completed the contemplated transfer of assets on January 20, 2012. The written Asset Purchase Agreement attests to a cash payment of $150,000.00 and provides that PTQ sold T-Tex certain assets listed on an exhibit attached to the agreement. The attached exhibit identifies fourteen categories of equipment as the subject of the transfer.

On February 6, 2012, counsel for the Hooper plaintiffs forwarded counsel for PTQ a written demand for the payment of the fair market value of their shares of stock pursuant to the authority of La.R.S. 12:131(C)(2). Specifically, the demand requested the payment of $250,000.00 as payment. Attached to the demand was a written acknowledgment from the manager of Argent Trust Company to the effect that the Hooper plaintiffs had placed the two 500 share stock certificates in the trust company's custody subject to the condition that they be "delivered to PTQ Enterprises, Inc. upon payment of the value of the shares determined in accordance with the provisions of LSA-R.S. 12:131(C)." By a letter

dated February 17, 2012, counsel for PTQ gave the Hooper plaintiffs written notice of the corporation's objection to the filing of the written demand for the fair cash value of the shares. The letter based the objection on the provision of La.R.S. 12:131(B)(2) recognized in the defendant shareholders' resolution of January 18, 2012, concluding that because the net proceeds of the sale would be distributed within one year, there was no need for an immediate establishment of the fair market value of the shares.

In his January 10, 2013 affidavit, Mr. Hodnett asserted that on January 8, 2013, PTQ distributed to all shareholders the net proceeds from the $150,000.00 sale to T-Tex. The net proceeds tendered to the Hooper plaintiffs was $34,685.07. He also asserted that, assuming the assets sold to T-Texwere worth $150,000.00, the total tangible assets of the corporation immediately before the transaction would have been valued at $395,000.00. The $245,000.00 difference, according to Mr. Hodnett's affidavit, was comprised of cash on deposit at the time of the transaction.

In its reasons for judgment, the trial court concluded both that the sale to T-Tex was not a sale of all or substantially all of the corporate assets and that the sale fell within the exemption of La.R.S. 12:131(B)(2). In their three assignments of error, the Hooper plaintiffs assert that the trial court erred in both of these factual findings, and that it should have recognized their dissenter shareholder rights.

With regard to whether the corporation sold all of its assets, we note that at the January 17, 2012 meeting, the defendant shareholders clearly asserted that, while the corporation itself was not being sold, all of the assets were, and the corporation was ceasing business activities. Both motions passed at that meeting reflected the same intent, as did the resolution passed the next day. The transfer document lists the equipment transferred, and nothing in the record suggests that

12

the corporation is left with anything other than the $245,000.00 referred to in Mr. Hodnett's affidavit.

PTQ argues that the $245,000.00 on deposit was an asset of the corporation and, therefore, the sale was not for all of the corporate assets. In support of this argument, it directs this court to La.R.S. 12:1 which sets forth the definitions of general terms used in the Louisiana Business Corporation Law, and particularly to La.R.S. 12:1(D) which defines a corporation's assets as "all a corporation's property and rights of every kind" except treasury shares. While we recognize the accuracy of that language, we also note that the first sentence of the statute preceding all definitions states: "As used in this Chapter, *unless the context requires otherwise*," the following definitions should be applied. La.R.S 12:1 (emphasis added).

We reject PTQ's argument that the $245,000.00 on deposit constitutes an asset contemplated under La.R.S. 12:121. Such an interpretation would lead to the absurd conclusion that a cash purchase for all of the assets of PTQ would have required T-Tex to tender payment of $395,000.00 and immediately receive $245,000.00 of its payment back, such that all but $150,000.00 of the transaction was a wash. We find that La.R.S. 12:121 is one of those situations where the context of statute requires a different definition of asset than they set forth in La.R.S. 12:1(D). While the cash on hand is a corporate asset for the purposes of determining a shareholder's interest, we do not interpret La.R.S. 12:131 to require inclusion of that value in determining whether all of the corporate assets are being sold.

Although we find that the sale was of all of the assets of PTQ, we also find that La.R.S. 12:131(B)(2) applies to preclude dissenter shareholder rights from applying in this case. It is not disputed that the defendant shareholders voted to

13

provide for the one-year distribution recognized in La.R.S. 12:131(B)(2); the ultimate transaction was for cash, and the net proceeds were distributed to the shareholders within the year window of time.

## DISPOSITION

For the foregoing reasons, we affirm the trial court's grant of summary judgment dismissing the claims of Shirley Elaine Foster Hooper, Edward W. Hooper, Jr., and Gregory Walter Hooper against PTQ Enterprises, Inc. We assess all costs of this appeal to Shirley Elaine Foster Hooper, Edward W. Hooper, Jr., and Gregory Walter Hooper.

**AFFIRMED.**